UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **KEITH JONES,** <br><br> **Defendant.** | **Crim. Action No.: 1:23CR397** |

### MR. JONES'S MOTION TO RECONSIDER DETENTION ORDER AND REQUEST FOR AN EMERGENCY HEARING

Keith Jones, ("Keith" or "Mr. Jones") through counsel, respectfully submits this Motion to Reconsider the Detention Order and respectfully requests an emergency hearing on this Motion.[1] Since the last status hearing in this case, two material changes have occurred in Mr. Jones's life. First, the matriarch of their close-knit family, Mr. Jones's maternal grandmother, Pansy Thorton, passed away. The funeral is going to be held on January 12, 2024.[2] Mr. Jones's mother in particular is struggling with the loss and needs Mr. Jones's support during this difficult time. Second, as this Court is aware, Mr. Jones's partner, Ms. McNair, is four months pregnant. Doctors have deemed her "high risk" and she is on bedrest and is unable to work. She too needs Mr. Jones's support,

---

[1] A detention hearing was held on Monday, November 6, 2023, after which Mr. Jones was ordered detained. Following the detention hearing, undersigned counsel filed an appeal. ECF. No. 10. At the hearing on the appeal on November 27, 2023, this Court declined to release Mr. Jones.

[2] In the alternative, Mr. Jones would move for a modification of the detention order so that he be temporarily released on January 12, 2024, to attend the funeral. Undersigned counsel is working with the family to obtain the funeral details and will provide them to the Court and government as soon as possible.

especially because she also takes care of her 12-year-old daughter. Pre-Trial Services has deemed Ms. McNair to be a suitable to be third-party custodian.

For the reasons stated herein, Mr. Jones respectfully requests that this Court release him pursuant to the Bail Reform Act, under conditions of home confinement and any other conditions the Court deems appropriate. 18 U.S.C. § 3142. He further requests that a video-teleconference or in-person emergency hearing be scheduled as soon as possible, in light of the upcoming funeral. The defense would not object to the government's oral response to this Motion.

Mr. Jones is 27 years old. Prior to his arrest, he was living with his mother, Javonna Thorton, and his partner of six years, Lapriya McNair.

Prior to his arrest, Mr. Jones was employed at Never Give Up DC, a non-profit organization that provides mentoring services to District youth. Mr. Jones's supervisor, Trayvon Simmons, represented to counsel that Mr. Jones is a valued employee. Mr. Jones was earning a $1000 stipend every two weeks for his work at Never Give Up.

As demonstrated by the letters previously submitted to the Court, Mr. Jones has strong family support in the community. His partner and mother in particular are willing and able to assist him in complying with any conditions of release this Court imposes.

## ARGUMENT
### I. Legal standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure

12

the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(b), (c)(1)(B).

The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Jones be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g). There is no presumption for detention in this case. Therefore, the burden rests with the government to establish by clear and convincing evidence that Mr. Jones presents a danger to the community or is a flight risk.[3]

**II.     The government cannot prove by clear and convincing evidence that detention is necessary.**

    *i.     Nature and circumstances of the offense charged*

---

[3] The Magistrate Court did not find that Mr. Jones is a flight risk.

The complaint charges Mr. Jones with possession of a firearm by a prohibited person. There is no evidence that Mr. Jones used the firearm during the commission of any crimes in the community. While the government alleges that he tossed the firearm and it discharged, there is no evidence that prior to that moment, he had used the firearm in any manner beyond possessing it.

Moreover, mere possession of a firearm without any evidence that Mr. Jones used, or even threatened to use, it should not be considered persuasive evidence of dangerousness on its own, considering the strong federal constitutional protection of firearm possession in this country. The Second Amendment of the United States Constitution permits United States citizens to keep and bear arms. As a result, many individuals lawfully obtain carrying concealed permits (CCP) so that they can exercise their right to protect themselves from harm in public. This right extends to residents of Washington, D.C. and is governed by the District of Columbia Municipal Regulations outlined in 24 D.C. A.D.C. §2232. After *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017), residents who are otherwise eligible to carry a firearm no longer have to provide a "good reason" to carry a firearm. In fact, as of July 30, 2021, there were 8, 060 active CCPs issued by the District of Columbia.[4] While counsel of course concedes that guns can be used in dangerous ways, possession alone does not implicate dangerousness. This factor weighs in favor of release.

ii.    *The weight of the evidence*

---

[4] Lott, John R. and Wang, Rujun, Concealed Carry Permit Holders Across the United States: 2021 (October 6, 2021). Available at
SSRN: https://ssrn.com/abstract=3937627 or http://dx.doi.org/10.2139/ssrn.3937627

12

The weight of the evidence does not provide clear and convincing evidence that Mr. Jones would be a danger to the community if released. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). Based on the recitations of facts in the complaint and the government's detention memo, it does not appear that any witness observed Mr. Jones with a firearm in the days leading up to his arrest. Unlike other cases that have come before this Court, there are no photos or social media posts of Mr. Jones with a firearm. There is no evidence that he used the firearm in commission of another offense. As for the day of his arrest, according to the government's memo, Mr. Jones was with someone else moments before his arrest and they both started running from police before the firearm was allegedly tossed and discharged.

In short, there is not clear and convincing evidence that Mr. Jones is a danger to the community.

### iii.   Mr. Jones's history and characteristics

This factor weighs heavily in favor of release. Mr. Jones is a lifelong resident of Washington, D.C. He has one prior offense which occurred four years ago and for which he successfully completed probation. He was raised by his mother, who is a home health aide. He did not know his father but his maternal grandmother served as a second parent to him. His partner of six years, Ms. McNair, ran her own business until recently, when doctors advised that she go on bedrest. Prior to his arrest, Mr. Jones was employed at a non-profit organization that serves the community.

Mr. Jones's family support, employment, and strong ties to Washington, D.C. weigh heavily in favor of his release.

    *iv.*    *The nature and seriousness of the danger posed by the person to any person in the community if he is released.*

For pretrial detention to be consistent with the Due Process Clause, the government must prove "by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community" and that pretrial detention is necessary to "disable the arrestee from executing that threat." *Munchel*, 991 F.3d at 1280 (emphases in original) (quoting *Salerno,* 481 U.S. at 751). Here, the government cannot establish that Mr. Jones is a threat to the community. Again, there is no evidence that he was using the firearm in any connection with any criminal activity. The Court previously considered evidence the government proffered that Mr. Jones was involved in drug activity and counsel has reviewed additional evidence, the bulk of which were ambiguous text messages exchanged in 2021 or the summer of 2022. This evidence does not add much to the analysis as to whether Mr. Jones is a danger the community, especially in light of conditions of release the Court could order, such as barring Mr. Jones from using a phone or the internet.

If the Court is concerned about any danger from Mr. Jones's alleged offenses, conditions, such as home detention, are available to sufficiently mitigate any such potential danger.

### III.    Sufficient conditions exist that will reasonably Mr. Jones's appearance as required and the safety of any other person and the community

Recent events in Mr. Jones's life, in addition to strict conditions this Court could impose will ensure the safety of the community and Mr. Jones's return to Court. It bears repeating here that he could be ordered to home incarceration with GPS tracking and a prohibition on electronic devices. Mr. Jones's case is not one of those few cases the

Supreme Court has identified that warrant pre-trial detention. *See Salerno,* 481 U.S. 739, 755 (pre-trial liberty is "the norm.").

## CONCLUSION

Wherefore, for the foregoing reasons, the government has not met its burden of proving that there are no conditions or combination of conditions that will assure the safety of the community. Mr. Jones respectfully requests that the Court release him and impose whatever conditions the Court deems appropriate. Mr. Jones respectfully requests that the Court schedule a hearing on this Motion as soon as the Court is available.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
ELIZABETH MULLIN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

12